IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

REYNALDO DEWAYNE DRAPER,      §
TDCJ-CID NO. 1641883,         §
                              §
            Petitioner,       §
                              §
v.                            §
                              §        CIVIL ACTION NO. H-13-0981
WILLIAM STEPHENS, Director,   §
Texas Department of Criminal  §
Justice, Correctional         §
Institutions Division,        §
                              §
            Respondent.[1]    §

## MEMORANDUM OPINION AND ORDER

Reynaldo Dewayne Draper, an inmate of the Texas Department of
Criminal Justice - Correctional Institutions Division ("TDCJ-CID"),
filed a Petition for a Writ of Habeas Corpus By a Person in State
Custody ("Petition") (Docket Entry No. 1) challenging a criminal
conviction in state court.  The respondent has filed a Motion for
Summary Judgment with Brief in Support (Docket Entry No. 21), which
is supported by state court records.  After reviewing the pleadings
and the records, the court has determined that the motion should be
granted.

---

[1]Rick Thaler was named as respondent in this action because he
was the Director of the TDCJ at the time the petition for writ of
habeas corpus was filed.  Because Thaler has retired, the Court
substitutes his successor, Director William Stephens, as the proper
respondent pursuant to Rule 2(a) of the Rules Governing Section
2254 Cases in the United States District Courts.

## I.  **Procedural History**

Draper was charged with murdering Jairus Elon White in Fort Bend County, Texas, on August 23, 2008 (Indictment, Docket Entry No. 18-37, p. 18).  The Indictment also alleged that Draper had been previously convicted of felony possession of a controlled substance, cocaine.  Id.  After entering a plea of not guilty, Draper was tried before a jury, which found him guilty as charged in the Indictment (Verdict, Docket Entry No. 18-38, p. 34).  After finding that Draper had been previously convicted of a felony offense, the jury sentenced him to 75 years in prison and assessed a $10,000.00 fine.  (Docket Entry No. 18-38, Verdict, p. 39; Order of Commitment, p. 40; Judgment on Jury Verdict of Guilty, pp. 41-43; State v. Draper, No. 50076-A (240th Dist. Ct., Fort Bend County, Tex., Feb. 9, 2010))

Draper appealed the judgment, which was affirmed by the Court of Appeals for the Fourteenth District of Texas.  Draper v. State, 335 S.W.3d 412 (Tex. App. – Houston [14th Dist.] 2011, pet. ref'd).  The Texas Court of Criminal Appeals refused Draper's petition for discretionary review (PDR) on June 22, 2011.  Draper v. State, No. 0744-11.

On August 29, 2012, Draper filed a state application for a writ of habeas corpus challenging the conviction pursuant to Article 11.07 of the Texas Code of Criminal Procedure (Original Application for a Writ of Habeas Corpus, Docket Entry No. 18-38, pp. 55-73).  Upon receiving the application the state district

-2-

court issued an Order Designating Issues with instructions for Draper's trial counsel and appellate counsel to answer Draper's allegations of ineffective assistance of counsel (Docket Entry No. 18-43, pp. 9-10). After considering the application, the State's answer, the records, and the affidavits submitted by Draper's former counsel, the trial court issued Findings of Fact and Conclusions of Law ("Findings and Conclusions") recommending that the application be denied (Docket Entry No. 18-43, pp. 98-105). The habeas proceeding was then forwarded to the Court of Criminal Appeals, which denied the application without a written order on findings of the trial court without a hearing. Ex parte Draper, No. 79,228-01 (Tex. Crim. App. April 17, 2013). Draper filed the instant federal habeas petition for a writ of habeas corpus challenging the murder conviction on March 25, 2013.

## II. Draper's Claims and Respondent's Arguments

Draper has presented the following grounds for relief in his federal habeas petition:

1.  The State violated Draper's due process rights by withholding exculpatory evidence (a 911 call revealed during cross-examination) in violation of Brady[2] (Petition, Docket Entry No. 1, pp. 6-7);

2.  The State violated its own pretrial motion in limine by eliciting testimony regarding Draper's alleged gang affiliation (Id. at 6-8.);

3.  The trial court erred in admitting Draper's gang affiliation into evidence and in failing to

_____

[2]Brady v. Maryland, 83 S. Ct. 1194, 1196-97 (1963).

-3-

instruct the jury to disregard the evidence (Id. at
9-10.);

4.    The  trial  court  erred  in  admitting  perjured
      testimony  of  the  State's  witness,  Kimberly
      Alexander (Id.);

5.    Draper was denied effective assistance of counsel
      when his trial attorney, Dorian Cotlar (a) failed
      to object to the State's questioning of Alexander
      that caused her to change her testimony; (b) failed
      to request a mistrial based on the State's coercion
      of  contradictory  testimony  from  Alexander;  and
      (c) elicited testimony from a detective that opened
      the door to violating the State's motion in limine,
      which had been granted (Id. at 10-11.);

6.    Draper was denied effective assistance of counsel
      when  his  appellate  attorney,  Cary  M.  Faden
      (a) filed a PDR for Draper after advising Draper
      that  he  would  have  to  file  a  pro  se  PDR  and
      (b) failed to raise issues on direct appeal (Id. at
      12-13.); and

7.    The trial court erred by (1) refusing to declare a
      mistrial after the jury indicated that it was
      hopelessly deadlocked and (2) issuing a coercive
      Allen[3] charge (Id. at 13-15.).

The  respondent  filed  a  motion  for  summary  judgment  arguing

that Draper has failed to meet the burden of proof necessary to

qualify for relief in a federal habeas corpus proceeding.  Draper

filed Petitioner's Objection to Respondent's Motion for Summary

Judgment (Docket Entry No. 24).

## III.  <u>Facts Established at Trial</u>

The Fourteenth Court of Appeals set forth a summary of the

evidence in its opinion as follows:

---

[3]<u>Allen v. United States</u>, 17 S. Ct. 492, 501 (1896).

Appellant invited several friends to a birthday party in his honor at a local bar.  After the bar closed and the party ended, appellant and his friends stayed behind to talk in the parking lot.  The complainant, who was not a part of appellant's group, stood nearby.  The complainant made a comment about appellant's friend, who was dancing on a parked car.  After a brief conversation between appellant and the complainant, the complainant turned to get into his car.  Witnesses testified that appellant pulled out a firearm, shot at the complainant from behind, and fired several more shots at the complainant after he fell to the ground.  Appellant fled, and the complainant died at the scene.  An autopsy revealed that the complainant sustained nine entrance and two exit gunshot wounds.

Draper v. State, 335 S.W.3d at 413.

## IV.   Standard of Review

Motions for summary judgment are typically governed by Rule 56 of the Federal Rules of Civil Procedure.  Habeas corpus proceedings, however, are governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA").  See Lindh v. Murphy, 117 S. Ct. 2059, 2067 (1997); see also Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000).  To the extent that the petitioner's claims were "adjudicated on the merits" in state court, the AEDPA standard found at 28 U.S.C. § 2254(d) applies.

Claims presenting pure questions of law and mixed questions of law and fact are governed by 28 U.S.C. § 2254(d)(1), which precludes habeas relief unless a petitioner demonstrates that the state court's decision to deny a claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

-5-

United States[.]"  28 U.S.C. § 2254(d)(1); <u>McGowen v. Thaler</u>, 675 F.3d 482, 489 (5th Cir. 2012).  A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts.  <u>See</u> <u>Williams v. Taylor</u>, 120 S. Ct. 1495, 1499-1500 (2000).  A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case.  <u>Day v. Quarterman</u>, 566 F.3d 527, 535 (5th Cir. 2009), <u>citing</u> <u>Brown v. Payton</u>, 125 S. Ct. 1432, 1438-39 (2005).  Under this standard an unreasonable application is more than merely incorrect or erroneous; rather, the state court's application of clearly established law must be "objectively unreasonable."  <u>Williams</u>, 120 S. Ct. 1521.

The Supreme Court has held that "review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits."  <u>Cullen v. Pinholster</u>, 131 S. Ct. 1388, 1398 (2011).  A state court's findings of fact "are 'presumed to be correct' unless the habeas petitioner rebuts the presumption through 'clear and convincing evidence.'"  <u>Nelson v. Quarterman</u>, 472 F.3d 287, 292 (5th Cir. 2006), <u>quoting</u> 28 U.S.C. § 2254(e)(1).  This presumption extends not only to express findings of fact, but also to the implicit findings of the state court.  <u>See</u> <u>Garcia v. Quarterman</u>, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted).

Where pure questions of fact are concerned a petitioner is not entitled to relief unless he demonstrates that the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2); see also Buntion v. Quarterman, 524 F.3d 664, 670 (5th Cir. 2008).

As this deferential standard reflects, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." Bell v. Cone, 122 S. Ct. 1843, 1849 (2002), citing Williams, 120 S. Ct. at 1518. The Supreme Court has underscored the extent of this deferential standard:

> [28 U.S.C. § 2254(d)] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining [a writ of] habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Richter, 131 S. Ct. at 786-87.

This deferential AEDPA standard of review applies even where the state court fails to cite applicable Supreme Court precedent or

-7-

fails to explain its decision.  <u>See</u> <u>Early v. Packer</u>, 123 S. Ct. 362, 365 (2002); <u>see also</u> <u>Richter</u>, 131 S. Ct. at 785 ("§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'").  With this deferential standard in mind, the petitioner's claims are examined below under the applicable legal standard.

## V.  <u>Discussion</u>

### A.  **Brady Claim**

In his first claim Draper contends that the State withheld exculpatory evidence in violation of <u>Brady</u> (Petition, Docket Entry No. 1, pp. 6-7).  He alleges that a 911 call had been made at the time of the incident indicating that a drive-by shooting had occurred (Memorandum of Law in Support of Petition ["Memorandum of Law"], Docket Entry No. 2, p. 10).  The call was revealed when the defense cross-examined Officer Jose Pena.  <u>Id.</u>  However, the recording and its contents were not available because the tape had been destroyed for lack of a timely request.  <u>Id.</u>  The respondent argues that there was no <u>Brady</u> violation because Draper had not been denied access to the evidence, and that <u>Brady</u> does not apply because the evidence was discovered during the trial.  The respondent further argues that there is no showing of bad faith because the tape was destroyed pursuant to standard procedures.  The respondent also contends that the evidence was not material to Draper's defense.

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 83 S. Ct. 1194, 1196-97 (1963).   To establish a Brady violation, [petitioner] must prove that (1) the prosecution actually suppressed the evidence, (2) the evidence was favorable to petitioner, (3) the evidence was material to the defense, and (4) the petitioner could not have discovered the evidence through reasonable diligence. Trottie v. Stephens, 720 F.3d 231, 251 (5th Cir. 2013), citing United States v. Brown, 650 F.3d 581, 587-88 (5th Cir. 2011).   "Although the State is obligated to disclose evidence to the defense, the State need not disgorge *every* piece of evidence in its possession.  Rather, under *Brady*, the State has an affirmative duty to disclose to the defense evidence that is favorable to the accused and material to guilt." Rector v. Johnson, 120 F.3d 551, 558 (5th Cir. 1997), citing United States v. Bagley, 105 S. Ct. 3375, 3379 (1985).   "Evidence is 'material' if there is a reasonable probability that, had the evidence been disclosed, the result at the trial would have been different; a reasonable probability is one that undermines confidence in the outcome of the trial." Summers v. Dretke, 431 F.3d 861, 878 (5th Cir. 2005), citing Duncan v. Cain, 278 F.3d 537, 539-40 (5th Cir. 2002), citing Bagley, 105 S. Ct. at 3383.

The state court dismissed Draper's claims regarding the 911 recording after finding that the recording had been destroyed in the course of standard operating procedures and that Draper had failed to prove that it had been destroyed in bad faith (Findings and Conclusions, Docket Entry No. 18-43, p. 103 ¶ 35).   The court also found that Draper had all of the information provided in the 911 recording and that he used the recording's destruction to impeach the investigation of the case.   Id.

The state court's finding that Draper failed to establish a Brady claim is not unreasonable because the evidence in question was produced during the trial.   See Reed v. Stephens, 739 F.3d 753, 783 (5th Cir. 2014), citing Lawrence v. Lensing, 42 F.3d 255, 257 (5th Cir. 1994) ("Brady claims involve 'the discovery, after trial of information which had been known to the prosecution but unknown to the defense.'").   Moreover, there was no showing that the defense could not have discovered the existence of the tape or its contents before the trial using due diligence.   Thus, Draper cannot succeed on his Brady claim.   Trottie, 720 F.3d at 251.   Draper's Brady claim also fails because he was able to take advantage of the tape's destruction by using it to impeach the State's case against Draper.   See West v. Johnson, 92 F.3d 1385, 1399 (5th Cir. 1996). Therefore, Draper's Brady claim must be dismissed.

## B.   Prosecutorial Error - Motion in Limine

In his second claim Draper argues that the State committed prosecutorial error by violating its own pretrial motion in limine

barring testimony regarding gang affiliation (Petition, Docket Entry No. 1, pp. 6-8). He asserts that Detective Mike Miller was called as a witness by the State during the trial and that during direct examination Miller testified that he found Draper's name while searching in a gang data base (Memorandum of Law, Docket Entry No. 2, pp. 13-15). Draper contends that this testimony was harmful because it prejudiced the jury against him. Id. The respondent argues that Draper has failed to make the requisite showing for relief.

Improper use of evidence by the state does not warrant habeas relief unless it is shown that the evidence "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 113 S. Ct. 1710, 1722 (1993); see also Barrientes v. Johnson, 221 F.3d 741, 753 (5th Cir. 2000) (in a habeas proceeding, the court must determine whether prosecutor's alleged misconduct rendered the trial fundamentally unfair), citing Ables v. Scott, 73 F.3d 591, 592 n.2 (5th Cir. 1996). Habeas relief can only be granted if it is found that the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 106 S. Ct. 2464, 2471 (1986), quoting Donnelly v. DeChristoforo, 94 S. Ct. 1868, 1871 (1974). A trial cannot be held to be fundamentally unfair unless it is found that "'there is a reasonable probability that the verdict might have been different had the trial been properly conducted.'" Barrientes, 221 F.3d at

753, quoting Foy v. Donnelly, 959 F.2d 1307, 1317 (5th Cir. 1992), quoting Darden, 106 S. Ct. at 2471. The appropriate standard of review of such a claim is "the narrow one of due process, and not the broad exercise of supervisory power." Darden, at 2471.

When considering a claim of prosecutorial misconduct the court must determine whether the alleged misconduct was "of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 107 S. Ct. 3102, 3109 (1987). To satisfy this requirement the petitioner must show that the misconduct was "'persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks.'" Geiger v. Cain, 540 F.3d 303, 308 (5th Cir. 2008), quoting Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988). The petitioner has the burden of proving that the conviction would not have occurred but for the complained of conduct. Nichols v. Scott, 69 F.3d 1255, 1278 (5th Cir. 1995), citing Felde v. Blackburn, 795 F.2d 400, 403 (5th Cir. 1986). Failure to raise an objection, apart from being a ground for procedural bar, may indicate that the evidence was not perceived as having a substantial adverse effect on the defense. Id., citing Derden v. McNeel, 978 F.2d 1453, 1458 (5th Cir. 1992).

The trial record reflects that the State filed the motion in limine in order to prevent the admission of evidence of the deceased engaging in extraneous offenses, violent acts, or gang activities (State's Motion in Limine, Docket Entry No. 18-12,

pp. 53-54).  During his testimony Detective Miller made a single
brief statement that, while trying to locate Draper as a suspect to
the shooting, he found Draper's name on a gang data base (Direct
Examination of Detective Mike Miller ["Miller Examination"], Docket
Entry No. 18-22, p. 25).  No objection was made.  On the contrary,
Draper's defense counsel, outside of the jury's presence, argued to
the court that the testimony opened the door permitting him to
cross-examine Detective Miller regarding the victim's gang member-
ship as well as others who may have been involved in the case.  Id.
at 38-43.  The State's attorney responded that Detective Miller's
passing reference to the gang data base was so cursory that the
jury probably would not have noticed it.  Id. at 41.  The trial
court denied defense counsel's request to go into gang issues with
Detective Miller and his motion for mistrial.  Id. at 42-43.

Under Texas law a party files a motion in limine to prevent an
opposing party from asking prejudicial questions.  Allison v.
Commission for Lawyer Discipline, 374 S.W.3d 520, 526 (Tex. App. –
Houston [14th Dist.] 2012, no pet.).  Generally, a timely objection
to a violation of a motion in limine is necessary to preserve a
complaint of error.  Wilkerson v. State, 881 S.W.2d 321, 326 (Tex.
Crim. App. 1994).  An objection after an event occurs cannot
fulfill the purpose of the objection, which is to prevent the
occurrence of the event.  Young v. State, 137 S.W.3d 65, 70 (Tex.
Crim. App. 2004).

Detective Miller's purported reference to Draper's gang membership was brief and inadvertent, and no timely objection was made to Miller's response.   Moreover, the record shows that Draper's defense counsel saw the testimony as an opportunity for him to present evidence that the victim was a gang member.   Given the inconsequential nature of the reference to the gang data base, the court concludes that Draper has failed to show that the testimony prejudiced his substantive rights.   See United States v. Munoz, 150 F.3d 401, 415 (5th Cir. 1998).   Draper fails to show that the state court was unreasonable in denying his claim that the State violated its own motion in limine.   See Riddle v. Cockrell, 288 F.3d 713, 716 (5th Cir. 2002).   Therefore, the claim must be dismissed.

## C.   Evidence of Gang Affiliation

In his third claim Draper argues that the trial court erred in admitting evidence of Draper's gang affiliation and in failing to instruct the jury to disregard the evidence (Petition, Docket Entry No. 1, pp. 9-10).   Draper refers to the hearing, held outside of the jury's presence, after Detective Miller's testimony of locating him in a gang data base (Docket Entry No. 2, p. 16).   Draper contends that allowing such evidence denied him a fair trial because he was implicated as an alleged gang member.   He also complains that the trial court erred in denying a mistrial based on the admission of evidence of gang activity.

-14-

As explained in the previous section of this Memorandum Opinion and Order, the trial court denied Draper's request for a mistrial immediately after having denied his request to elicit more testimony from Detective Miller about gang activity (Miller Examination, Docket Entry No. 18-22, pp. 42-43). It appears that Draper is trying to have it both ways by seeking inclusion of evidence of the victim's gang membership while excluding any evidence that would imply that Draper is involved with a gang. Moreover, there is no indication that the testimony in question implicated Draper as a gang member. On cross-examination, Detective Miller explained that he was using a computer program called "Gang Tracker," which performed various functions as an investigative tool for the police. Id. at 43-45. He admitted that the program produced a phone number for Kimberly Alexander, a witness who was not alleged to be a gang member. Id. at 45.

Draper is not entitled to habeas relief based on the trial court's alleged error because he has failed to show that Miller's statement had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 113 S. Ct. at 1722.

## D.    Perjured Testimony

In his fourth claim Draper argues that the trial court erred in admitting perjured testimony of the State's witness, Kimberly Alexander (Petition, Docket Entry No. 1, pp. 9-10). He asserts that Alexander gave inconsistent testimony at trial, which he

-15-

argues is tantamount to perjury.  Draper alleges that Alexander gave false and misleading statements after being coached by the police (Memorandum of Law, Docket Entry No. 2, pp. 19-21).  Draper contends that Alexander was an unreliable witness and that her testimony denied him due process by adversely affecting the outcome of his trial.  The respondent argues that Draper's claims are conclusory and are not supported by any evidence.

"The Due Process Clause of the Fourteenth Amendment forbids the State from knowingly using perjured testimony."  Beltran v. Cockrell, 294 F.3d 730, 735 (5th Cir. 2002), citing Knox v. Johnson, 224 F.3d 470, 477 (5th Cir. 2000).  To establish a due process violation based on the State's knowing use of false or misleading evidence, a habeas petitioner must show (1) the evidence was false, (2) the evidence was material, and (3) the State knew that the evidence was false.  Id., citing Nobles v. Johnson, 127 F.3d 409, 415 (5th Cir. 1997).  "Evidence is false if, inter alia, it is specific misleading evidence important to the prosecution's case in chief."  Nobles, 127 F.3d at 415, citing Donnelly v. DeChristoforo, 94 S. Ct. 1868, 1873 (1974).  "False evidence is 'material' only 'if there is any reasonable likelihood that [it] could have affected the jury's verdict."  Id., citing Westley v. Johnson, 83 F.3d 714, 726 (5th Cir. 1996).

Draper claimed in his state habeas application that the State used Alexander's perjured testimony to convict him (Docket Entry No. 18-38, p. 66).  In its Findings and Conclusions, the state

habeas court found that, "[Draper] cites to inconsistencies in the testimony of Ms. Alexander, but does not provide evidence that her testimony was perjured" (Docket Entry No. 18-43, p. 102).   The State court, which had heard the evidence at trial, also found that Draper presented no evidence indicating that Alexander had an intent to deceive. Id.   The state habeas court's findings are presumed to be correct on federal habeas review. Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000); see also Boyle v. Johnson, 93 F.3d 180, 186 (5th Cir. 1996) ("The presumption is particularly strong where, as here, the habeas court was the same court that presided over the trial."), citing May v. Collins, 955 F.2d 299, 314 (5th Cir. 1992).   As the state court observed, inconsistent statements by a witness are not alone sufficient to establish that the witness committed perjury. Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990), citing Little v. Butler, 848 F.2d 73, 76 (5th Cir. 1988).   In addition, there is no evidence to support a finding that the State knowingly used perjured testimony to convict Draper. United States v. Haese, 162 F.3d 359, 365 (5th Cir. 1998); Little v. Butler, 848 F.2d 73, 76 (5th Cir. 1988).   The presumptively correct state court findings are not unreasonable and defeat Draper's claim that he was convicted through the knowing use of perjured testimony. Boyle, 93 F.3d at 186.

**E.   Effective Assistance of Counsel at Trial**

In his fifth claim Draper contends that he was denied effective assistance of counsel when his trial attorney, Dorian

Cotlar, (a) failed to object to the State's questioning of Alexander that caused her to change her testimony; (b) failed to request a mistrial based on the State's coercion of contradictory testimony from Alexander; and (c) elicited testimony from Detective Miller during cross-examination that opened the door to violating the State's motion in limine, which had been previously granted by the trial court (Petition, Docket Entry No. 1, pp. 10-12). The respondent contends that Draper's allegations of ineffective assistance of counsel are conclusory and are refuted by the state habeas record.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel at trial. Yarborough v. Gentry, 124 S. Ct. 1, 4 (2003). To establish denial of effective assistance of counsel the petitioner must demonstrate both deficient performance and prejudice resulting from that deficiency. See Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984). In order to show deficient performance, the petitioner must demonstrate that his counsel's actions "'fell below an objective standard of reasonableness.'" Jones v. Jones, 163 F.3d 285, 300-01 (5th Cir. 1998), quoting Strickland, 104 S. Ct. at 2064. To establish prejudice the petitioner must show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Harris v.

Warden, Louisiana State Penitentiary, 152 F.3d 430, 440 (5th Cir. 1998), quoting Strickland, 104 S. Ct. at 2068.  A habeas corpus claim of ineffective assistance of counsel in a habeas corpus proceeding must be dismissed if the petitioner fails to satisfy either prong of the Strickland test.  Sayre v. Anderson, 238 F.3d 631, 635 (5th Cir. 2001); Amos v. Scott, 61 F.3d 333, 348 (5th Cir. 1995) ("In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.").

"Claims of ineffective assistance of counsel involve mixed questions of law and fact and are governed by § 2254(d)(1)."  Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012).  The petitioner has the burden of proving that his lawyer was ineffective.  Id.; Galvan v. Cockrell, 293 F.3d 760, 764 (5th Cir. 2002).  He cannot rely on conclusory allegations to establish his claim.  Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000), citing Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983).

The petitioner must show that the state court's determination that the petitioner failed to make a showing of ineffective assistance of counsel was contrary to or an unreasonable application of the Strickland standard.  Charles v. Thaler, 629 F.3d 494, 501 (5th Cir. 2011), citing Schaetzle v. Cockrell, 343 F.3d 440, 444 (5th Cir. 2003).  Judicial review of  an attorney's

-19-

performance is 'highly deferential' with a strong presumption that his performance was adequate.  McAfee v. Thaler, 630 F.3d 383, 394 (5th Cir. 2011).

    1.   Failure to Object

Draper alleges that he was denied effective assistance of trial counsel because Cotlar failed to object to the State's questioning of Alexander, which caused her to change her answers (Memorandum of Law, Docket Entry No. 2, p. 24).  Draper asserts that Alexander testified that she was on Ecstasy, a psychoactive drug, at the time of the offense.  Id.  He also contends that she changed her answer from "no" to "yes" when she was asked whether she saw someone hand something "shiny" to Draper.

Draper raised this allegation in his state habeas application (Application for a Writ of Habeas Corpus, Docket Entry No. 18-38, pp. 61-62), and the district court ordered Cotlar to file an affidavit providing specific facts addressing Draper's allegations (Order Designating Issues, Docket Entry No. 18-43, p. 9).  Cotlar refuted Draper's allegation by stating the follow in his affidavit:

> Mr. Draper alleges that I was ineffective because I "failed to object" when the State asked Ms. Alexander questions that "caused her to change her answer[s]".  I know of no legal objection to a witness changing her answer.  Ms. Alexander's testimony literally changed depending on whether she was on direct examination or cross examination.  She gave conflicting answers and was equivocal during much of her testimony.  Further, during an aggressive cross-examination by me, Ms. Alexander (who was pregnant) actually went into premature labor, citing my cross-examination as a stressor that caused it.

-20-

Fort Bend EMS was called to the Fort Bend County Courthouse and the trial was recessed.

The fact that Ms. Alexander admitted that she was "high on ecstacy [sic]" went to the weight of her testimony, not her testimony's admissibility. In fact, because she gave testimony that hurt Mr. Draper, I *wanted* the jury to know that she had been under the influence of recreational drugs. There were no grounds for either a mistrial or for Ms. Alexander's testimony to be "thrown out" as a result of her testimony. The issue of the police allegedly playing Ms. Alexander another witnesses' [sic] statement was elicited through testimony. The jury was able to afford that testimony the weight that it wanted to.

(Affidavit of Dorian Cotlar, Exhibit A to State's Supplemental Answer in Opposition to Applicant's Application for Writ of Habeas Corpus ["Cotlar Affidavit"], Docket Entry No. 18-43, pp. 65-66 (emphasis in original))

Cotlar's statement is supported by the trial transcript of Alexander's testimony, which includes numerous objections raised by Cotlar during direct examination as well as Cotlar's vigorous cross-examination (Direct Examination of Kimberly Alexander, Docket Entry No. 18-20, pp. 12-66). After reviewing the reporter's record and Cotlar's affidavit, the trial court found that Cotlar was credible and that he wanted the jury to know that Alexander was under the influence of recreational drugs because her testimony was harmful to Draper's defense (Findings and Conclusions, Docket Entry No. 18-43, pp. 100-101). The court also found that there was no legal basis to support a mistrial or to strike Alexander's testimony. Id. at 101, 103. The trial court concluded that Draper failed to prove that Cotlar's performance was deficient and that

there was nothing in the record to support his claims of ineffective assistance of counsel (Findings and Conclusions, Docket Entry No. 18-43, pp. 103-104).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Skinner v. Quarterman, 528 F.3d 336, 341 (5th Cir. 2008), quoting Cotton v. Cockrell, 343 F.3d 746, 752-53 (5th Cir. 2003).   Cotlar presented a feasible strategy in his affidavit regarding his response to Alexander's harmful testimony.   He sought to discredit it by proving she was under the influence of drugs at the time of the incident.   The state court was not unreasonable in finding that Cotlar was not ineffective in not making an objection, which would have almost certainly been overruled.   See Charles v. Thaler, 629 F.3d 494, 501 -502 (5th Cir. 2011); see also Thompson v. Thaler, 432 F. App'x 376, 379 (5th Cir. 2011) (ineffective assistance of counsel claim precluded by state court's finding that objection would have been futile).   "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."   Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994).   Draper's ineffective assistance of counsel claim based on his trial attorney's failure to raise an objection during the State's direct examination of Kimberly Alexander has no merit.

2.   <u>Failure to Move for Mistrial</u>

Draper next alleges that Cotlar was ineffective for failing to ask the court to declare a mistrial on the basis of Alexander's testimony that the police had threatened her before the trial (Petition, Docket Entry No. 1, p. 10).   This issue was also addressed in the state habeas action (Application for a Writ of Habeas Corpus, Docket Entry No. 18-38, p. 62).   Cotlar's affidavit contains the following response to this allegation:

> Additionally, Draper alleges that I was ineffective because "I caused [Alexander] to admit that the police had been threatening her" and that I "failed to request a mistrial." Getting her to admit that police had threatened her was <u>helpful</u> to my client. Additionally, none of that testimony raised any grounds for a mistrial.

(Cotlar Affidavit, Docket Entry No. 18-43, p. 66 (emphasis in original))

The state habeas court found that Cotlar's performance was not deficient because there was no basis to strike Alexander's testimony or declare a mistrial.   In addition, the court found that Alexander's admission that the police had threatened her was helpful to Draper's case.   <u>Id.</u> at 101.   Draper fails to overcome the presumptions that Cotlar's strategy was sound.   <u>Bell</u>, 122 S. Ct. at 1852; <u>Clark v. Johnson</u>, 227 F.3d 273, 282-83 (5th Cir. 2000), and that the trial court's findings were correct under the AEDPA.

3.   <u>Cross-Examination of Detective Miller</u>

Draper's final allegation against his trial attorney is that Cotlar elicited testimony from Detective Miller during cross-

examination that opened the door to violating the State's motion in limine, which had been previously granted by the trial court (Petition, Docket Entry No. 1, pp. 10-12). The respondent contends that there is no merit to this claim because the motion in limine pertained only to the deceased victim, not to Draper.

The State's motion in limine moved the court to instruct the defendant to not allude to, refer to, or in any way bring before the jury the following information regarding the victim:

> 2.  The general character of the victim or any specific acts of violence of the victim;
>
> \*   \*   \*   \*   \*
>
> 6.  Any mention that the victim is or was a gang member or in any way affiliated with a gang;
>
> 7.  Any mention of the tattoos on the victim's body as being "gang tattoos" or tattoos affiliated with a gang.

(State's Motion in Limine, Docket Entry No. 18-12, p. 53)

Before Detective Miller testified Cotlar argued that the court should admit evidence of the victim's gang affiliation (Docket Entry No. 18-22, pp. 4-8). The court denied Cotlar's request except for the limited purpose of asking whether the police gang task force was brought in for investigation. Id. at 7. During Detective Miller's testimony Cotlar raised an objection based on his belief that Miller "opened the door to gang membership" by referring to a gang database in which Draper was found. (Miller's Examination, Docket Entry No. 18-22, pp. 36-37) Cotlar questioned Miller outside of the jury's presence whether the victim had

clothing and a tattoo that were indicative of gang membership. Id. at 39-40. Detective Miller conceded that such items would indicate that the person might be in a gang. Id. at 40. Cotlar then reiterated his argument that the testimony opened the door. Id. at 41. The State responded that the reference to the gang data base was inconsequential and not intended to implicate that Draper was in a gang. Id. at 42. The court denied Cotlar's request to question Detective Miller before the jury about gang issues. Id. at 42. The court denied Cotlar's request for a mistrial, and Cotlar requested a bill of exceptions. Id. at 42-43.

In the state habeas proceedings Cotlar refuted Draper's argument that he was ineffective by stating that he "aggressively tried to have the decedent's gang affiliation presented to the jury." (Cotlar Affidavit, Docket Entry No. 18-43, p. 66) He even tried to get the decedent's autopsy report admitted because it gave a detailed description of the gang tattoos on the decedent's body. The court agreed that the report was admissible, but it allowed the State to redact the references to the tattoos over Cotlar's objections. Id.

After reviewing the trial transcript, the state habeas court found that Cotlar had attempted to admit evidence of the decedent's gang affiliation. Id. at 101. The court further found that Draper had failed to plead or prove that Cotlar's performance was deficient. Id. at 102. Cotlar's efforts to present evidence of the decedent's gang history was sound strategy and not a basis for

finding deficient performance.  <u>Riley v. Dretke</u>, 362 F.3d 302, 305 (5th Cir. 2004) ("'Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . .'" ), <u>quoting</u> <u>Wiggins v. Smith</u>, 123 S. Ct. 2527, 2535 (2003).  Draper has failed to show that the court's findings and conclusions of law are unreasonable.

**F.   Effective Assistance of Counsel on Appeal**

In his sixth claim Draper contends that he was denied effective assistance of counsel when his appellate attorney, Cary M. Faden, (a) filed a PDR for Draper after advising Draper that he would have to file a <u>pro</u> <u>se</u> PDR and (b) failed to raise two issues on direct appeal (Petition, Docket Entry No. 1, p. 13). Draper complains that Faden sent him a letter informing him that his appeal had been affirmed and that he was no longer representing him (Docket Entry No. 2, p. 29).  Draper was also told that he would have to file his own PDR, although Faden's letter arrived only a few days before the expiration of the 30-day period for filing a PDR.  Draper states that he filed a motion for extension of time with the Court of Criminal Appeals only to be told that a PDR had already been filed.  Draper complains that Faden failed to notify him that he had filed a PDR or send him a copy of the PDR until after Draper filed a complaint with the State Bar of Texas. Draper contends that Faden filed the PDR to prevent him from filing his own PDR, which he claims would have better briefed the issues (Memorandum of Law, Docket Entry No. 2, p. 30).

Draper also complains that Faden failed to include claims in his appeal. Id. However, Draper does not specify in his petition or in his supporting memorandum what claims should have been raised or how they would have been successful. He merely states:

> Petitioner's Appeal Attorney had much opportunity to review the record. During his thorough research, he should have found at least the (5) Grounds for Review in this Petition. Instead, Mr. Faden briefed three errors: factual sufficiency, legal sufficiency and the Allen charge during jury deliberations for punishment. Had he reviewed the record more fully, he would have discovered the facts therein. He was therefore ineffective in assistance and deficient in performance.

Id.

Like Cotlar, Draper's appellate attorney, Cary Faden, was ordered by the state habeas court to file a response to Draper's allegations that he provided ineffective assistance of counsel on appeal. Faden responded by submitting an affidavit in which he stated that Draper's allegations were meritless and unsupported (Affidavit of Cary M. Faden, Exhibit D to State's Supplemental Answer, Docket Entry No. 18-43, pp. 84-89). Faden stated that he fully investigated the court's record and considered all potential issues. Id. at 85. Faden also denied ever telling Draper that he was no longer representing him and asserts that he informed Draper that he was filing a PDR on his behalf. Id. at 85-86. The state habeas court held in it's Findings and Conclusions that Faden had informed Draper that he would file a PDR. (Findings and Conclusions, Docket Entry No. 18-43, p. 102) The court also found that Draper had failed to state grounds for review that he would

-27-

have raised pro se or show how the grounds would have been successful in a PDR.  Id.  The court held that Draper failed to give a brief summary of the facts of the points of error his counsel should have raised on appeal or show that these were reversible grounds for error.  Id.  The court concluded that Draper failed to plead or prove his claims of deficient performance by an appellate counsel.  Id. at 105.  The respondent contends that the state habeas record and Faden's response in the state habeas proceedings refute Draper's claims of ineffective assistance of appellate counsel.  The respondent also contends that the claims are meritless.

Persons appealing a criminal court conviction are entitled to effective assistance of counsel if their appeal is a matter of right under state law.  Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir. 1998), citing Evitts v. Lucey, 105 S. Ct. 830, 834-35 (1985). Strickland's two-prong test regarding deficient performance and prejudice applies in determining whether appellate counsel was ineffective.  Smith v. Robbins, 120 S. Ct. 746, 764 (2000).  To establish deficient performance Draper must show that his appellate attorney unreasonably failed to discover non-frivolous issues and include them in his brief.  Id.  However, appellate counsel is not required to include every non-frivolous claim in his brief.  Id. at 765.  To establish prejudice Draper "must show a reasonable probability" that but for his counsel's failure to raise the claims asserted by Draper in his brief, Draper would have prevailed on

-28-

appeal.  Id. at 764.  In doing so, he must demonstrate that the issues in question were stronger than those presented by his appellate counsel.  Id. at 765-66.

A reviewing court cannot fault appellate counsel for not raising meritless claims.  See United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); Clark, 19 F.3d at 966.

Draper has failed to clearly identify any claims that should have been raised on appeal, let alone show that there was any merit to the unspecified claims.  His allegations are conclusory. Moreover, there is no merit to Draper's claim of ineffective assistance of appellate counsel because he has not demonstrated prejudice.  Schaetzle v. Cockrell, 343 F.3d 440, 444 (5th Cir. 2003).  Draper has failed to show that the state court's decision was unreasonable.

## G.    Denial of Mistrial and Issuance of Allen Charge

In his last claim Draper contends that the trial court erred by (1) refusing to declare a mistrial after the jury indicated that it was hopelessly deadlocked and (2) issuing a coercive Allen charge (Petition, Docket Entry No. 1, pp. 13-15).  The respondent points out that these issues were presented on direct appeal and on

discretionary review and were rejected by both appellate courts. Draper argued on appeal that the trial court erred when it refused to grant a mistrial after (1) the jury indicated that it was hopelessly deadlocked, and (2) the trial court issued a coercive <u>Allen</u> charge.  <u>Draper</u>, 335 S.W.3d at 415.  The Court of Appeals made the following findings:

> The trial court received three notes from the jury during its deliberations on punishment:
>
> **Jury Note 1 at 11:10 a.m.:**  We need a clarification on the terms 99 years or life.  Are these equal or different? If so, what are the differences?
>
> **Response at 11:14 a.m.:**  I cannot answer this question. Please refer to the charge and continue your deliberations.
>
> **Jury Note 2 at 2:46 p.m.:**  We need to know what will result if we cannot reach an agreement.
>
> **Response at 3:02 p.m.:**  I cannot answer this question. Please refer to the charge and continue your deliberations.
>
> **Jury Note 3 at 6:35 p.m.:**  We are 11-1 after 7 hours.  We have one juror that will not move or listen to the other jurors because he/she doesn't feel that the evidence presented by the prosecution (amount of time taken/quality of the case presented) is enough to change his decision.  This juror has made it clear that the defendant is guilty.  On multiple occasions yet he/she has stated he/she wants to "make a point" to the prosecution.  Additional comments made regarding his decision "This is not about Renaldo [sic] Draper."
>
> Appellant moved for a mistrial, arguing that the note indicated that the jury was hopelessly deadlocked.  <u>See</u> Tex. Code Crim. Proc. Ann. art. 36.31 (Vernon 2006).  The trial court denied appellant's motion and proposed that the jury be given an <u>Allen</u> charge.  Appellant objected to the trial court's proposed <u>Allen</u> charge, claiming it was coercive because it implied that the entire case, rather

-30-

than just the punishment phase, would have to be retried
if the jury did not reach a unanimous decision on
punishment.   The trial court overruled appellant's
objection and gave the <u>Allen</u> charge to the jury.

<u>Draper</u>, 335 S.W.3d at 415-416.

The Court of Appeals found that the trial court had the
discretion to declare a mistrial if the jury had been deliberating
so long that it was improbable that an agreement would be made.
The Court also found that there was no set limit on the amount of
time that a jury must deliberate before it is apparent that it is
truly deadlocked.   <u>Id.</u> at 416, <u>citing</u> <u>Melancon v. State</u>, 66 S.W.3d
375, 383 (Tex. App. — Houston [14th Dist.] 2001, pet. ref'd)
(citations omitted).   The Court further held that state law
mandates reversal only where the trial court abused its discretion
in holding the jury for deliberations.   <u>Id.</u>, <u>citing</u> <u>Jackson v.</u>
<u>State</u>, 17 S.W.3d 664, 676 (Tex. Crim. App. 2000).

The Court of Appeals found that the jury had been deliberating
for seven hours after hearing testimony from 17 witnesses and
reviewing the evidence in 43 exhibits.   <u>Draper</u>, 335 S.W.3d at 416.
The guilt-innocence phase of the trial had lasted approximately 10-
12 hours after which the jury returned its verdict of guilty.   <u>Id.</u>
The punishment phase had lasted another four to five hours.   <u>Id.</u>
The Court of Appeals concluded that the trial court did not abuse
its discretion in denying a motion for mistrial in light of prior
state appellate court decisions on the issue.   <u>Id.</u> <u>citing</u>, <u>e.g.</u>,
<u>Matthews v. State</u>, 691 S.W.2d 2, 5 (Tex. App. — Beaumont 1984),

aff'd, 708 S.W.2d 835 (Tex. Crim. App. 1986) (jury deadlocked after ten hours of deliberation following trial with 17 witnesses, 49 exhibits, and multiple issues for the jury to resolve).

The Court of Appeals also considered Draper's claim that the Allen charge was coercive, and it reviewed the following instructions issued by the trial court in response to the jury's third note:

> If this jury finds itself unable to arrive at a unanimous verdict, it will be necessary for the Court to declare a mistrial and discharge the jury.
>
> This indictment will still be pending, and it is reasonable to assume that the case will be tried again before another jury at some future time. Any such future jury will be empanelled [sic] in the same way this jury has been empanelled [sic] and will likely hear the same evidence which has been presented to this jury. The questions to be determined by that jury will be the same questions confronting you and there is no reason to hope the next jury will find these questions any easier to decide than you have found them.
>
> With this additional instruction, you are instructed to continue deliberations in an effort to arrive at a verdict that is acceptable to all members of the jury if you can do so without doing violence to your conscience.

Draper, 335 S.W.3d at 417.

The Court of Appeals found that the Allen charge given at Draper's trial was similar to those given at other trials that were affirmed on appeal. Id., citing Arrevalo v. State, 489 S.W.2d 569, 570-72 (Tex. Crim. App. 1973); Willis v. State, 761 S.W.2d 434, 437-38 (Tex. App. — Houston [14th Dist.] 1998, pet. ref'd). The Court then concluded that the district court did not abuse its

discretion in denying Draper's motion to dismiss on the grounds that its <u>Allen</u> charge was coercive.

A habeas petitioner in a section 2254 proceeding is not entitled to relief unless he demonstrates the state court decision denying him relief is contrary to clearly established Supreme Court precedent. <u>Early v. Packer</u>, 123 S. Ct. 362, 365 (2002); <u>Lawrence v. Lensing</u>, 42 F.3d 255, 258 (5th Cir. 1994) ("A state prisoner seeking federal court review of his conviction pursuant to 28 U.S.C. § 2254 must assert a violation of a federal constitutional right."). The Court of Appeals' decision concerned state courts' interpretation of state law. Such matters are not subject to review in a federal habeas proceeding. <u>Hughes v. Dretke</u>, 412 F.3d 582, 590 (5th Cir. 2005). Moreover, Draper has failed to show that the state district court's rulings violated any right under the Constitution or laws of the United States. <u>See Boyd v. Scott</u>, 45 F.3d 876, 883-84 (5th Cir. 1994). Draper has failed to demonstrate that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law.

## VI.   Certificate of Appealability

Under 28 U.S.C. § 2253, Draper needs to obtain a certificate of appealability before he can appeal this Memorandum Opinion and Order dismissing his Petition. To obtain a certificate of appealability Draper must make a substantial showing of the denial

of a constitutional right.  <u>Williams v. Puckett</u>, 283 F.3d 272, 276 (5th Cir. 2002).  To make such a showing Draper must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further. <u>Lucas v. Johnson</u>, 132 F.3d 1069, 1073 (5th Cir. 1998).  For the reasons stated in this Memorandum Opinion and Order, Draper has not made a substantial showing of the denial of a constitutional right. <u>Newby v. Johnson</u>, 81 F.3d 567, 569 (5th Cir. 1996).  The court will therefore deny a Certificate of Appealability in this action.

## VII.  <u>Conclusion and Order</u>

For the reasons explained above, the court **ORDERS** the following:

1. The Motion to Stay and Abate (Docket Entry No. 5) is **DENIED**.

2. Respondent Stephen's Motion for Summary Judgment (Docket Entry No. 21) is **GRANTED**.

3. The Petition for a Writ of Habeas Corpus By a Person in State Custody (Docket Entry No. 1) is **DISMISSED WITH PREJUDICE**.

4. A Certificate of Appealability is **DENIED**.

**SIGNED** at Houston, Texas, on this the 20th day of March, 2014.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-34-